**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **NEURAL AI, LLC,** | |
| **Petitioner,** | **Case No.  7:26-mc-00242** |
| **v.** | |
| **MICROSOFT CORPORATION,** | **[Underlying Case: USDC Western District of Texas No. 7:24-cv-00221-ADA-DTG]** |
| **Respondent.** | |

**NEURAL AI'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA SERVED ON THIRD-PARTY MICROSOFT
CORPORATION**

**TABLE OF CONTENTS**

A.  FACTUAL BACKGROUND................................................................................................1

   1.  The Underlying Litigation ...............................................................................................1

   2.  The Rule 45 Subpoena to Microsoft and Microsoft's Initial Objections............................2

   3.  NAI's Meet-and-Confer Efforts and Narrowing and Microsoft's Continued
      Non-Compliance ............................................................................................................2

   4.  Procedural History .........................................................................................................3

B.  THE COURT HAS JURISDICTION OVER THIS DISPUTE BECAUSE
   THE PLACE OF COMPLIANCE IN AUSTIN IS PROPER. ..................................................4

C.  MICROSOFT MUST PRODUCE DOCUMENTS RESPONSIVE TO THE
   SUBPOENA. ...................................................................................................................6

   1.  The subpoenaed materials are relevant and proportional to the needs of the case. .............7

   2.  Microsoft's burden objections are unsupported....................................................................9

   3.  Microsoft cannot continue to defer production with vague promises................................10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*611 Carpenter LLC v. Atlantic Casualty Ins. Co.*,
  2024 WL 1977160 (W.D. Tex. April 30, 2024) ....................................................7, 9

*Conservation L. Found., Inc. v. Equilon Enters. LLC*,
  No. CV 17-396-WES, 2025 WL 2821238 (D.R.I. Oct. 3, 2025) ..............................5

*Linet Americas, Inc. v. Hill-Rom Holdings, Inc.*,
  No. 21-cv-6890, 2025 WL 889579 (N.D. Ill. Jan. 27, 2025).....................................6

*Meritage Homes, LLC v. AIG Specialty Ins. Co.*,
  No. 1:23-MC-00944-DII, 2024 WL 221448 (W.D. Tex. Jan. 18, 2024)...................4

*Philadelphia Indem. Ins. Co. v. Odessa Family YMCA*,
  No. 7:20-CV-00134-DC, 2020 WL 6484069 (W.D. Tex. June 26, 2020) ................4

*Trs. of Bos. Univ. v. Everlight Elecs. Co.*,
  No. 12-CV-11935-PBS, 2014 WL 12792496 (D. Mass. Sept. 8, 2014)................5, 6

*Velocity Pat. LLC v. FCA US LLC*,
  No. 13 CV 8419, 2017 WL 11893112 (N.D. Ill. Nov. 2, 2017)................................5

*Waller v. Jet Specialty, Inc.*,
  No. 23-CV-00121-DC-RCG, 2024 WL 7050192 (W.D. Tex. Nov. 19, 2024) .........7

**Rules**

Federal Rule of Civil Procedure 26 ......................................................................6, 7, 10

Federal Rule of Civil Proecdure 45 .................................................................... *passim*

ii

Despite eight months of good-faith efforts from petitioner Neural AI, LLC ("NAI") to negotiate with third-party subpoena recipient and respondent Microsoft Corporation ("Microsoft"), Microsoft still has not produced a single document in response to the subpoena NAI served on October 15, 2025. During that eight-month period, NAI sought discovery directly from the defendant in the underlying case NVIDIA Corporation ("NVIDIA"), used information learned from NVIDIA to try to guide Microsoft's search for responsive documents, provided additional explanation of the infringing technology, and ultimately narrowed its subpoena to only 9 priority requests for production. Still, Microsoft has not committed to producing a single document and instead only agreed generally to investigate the existence of possibly responsive documents and information. That sort of investigation is something that should have occurred months ago when Microsoft first received the subpoena. Its vague promises to search now—eight months after the subpoena was served and less than two months before fact discovery closes in the underlying case—is too little too late. NAI respectfully requests that the Court issue an order compelling Microsoft to comply with the Rule 45 subpoena NAI served on October 15 and requiring production of documents responsive to NAI's nine requests for production by a date certain prior to the close of fact discovery in the underlying case.

## A.      FACTUAL BACKGROUND

### 1.       The Underlying Litigation

The underlying action—*Neural AI, LLC v. NVIDIA Corporation* 7:24-cv-00221-ADA-DTG (W.D. Tex.)—involves claims of direct, indirect, and induced patent infringement by NVIDIA relating to U.S. Patent Nos. 8,648,867; RE49,461; and RE48,438 (the "Patents-in-Suit"). The Patents-in-Suit teach systems and methods for GPU-accelerated computing technology. NAI alleges that NVIDIA's hardware (i.e., its GPUs and servers) and software (i.e., NeMo, TensorRT, and cuDNN) infringe the Patents-in-Suit and that NAI encourages its customers to combine those

products in an infringing manner. Microsoft is one of NVIDIA's largest customers and a real-world integrator of the accused GPU-acceleration hardware and software. NAI has subpoenaed multiple of NVIDIA's customers seeking documents in their unique possession to support its allegations of indirect and induced infringement. NAI seeks production of those documents prior to August 11, 2026, the close of fact discovery in the underlying case.

**2.      The Rule 45 Subpoena to Microsoft and Microsoft's Initial Objections**

NAI served its Rule 45 subpoena on Microsoft on October 15, 2026. NAI noticed the place of compliance at 100 Congress Avenue, Suite 2000, Austin, Texas 78701. *See* Portuguese Decl., Exhibit A at 6. NAI chose this place of compliance because Microsoft has a significant presence and conducts business in Austin, Texas. For example, Microsoft currently has 46 job listings for in-person roles at its Austin, Texas location. *See* Portuguese Decl., Exhibit B. The initial subpoena contained 20 requests relating to Microsoft's purchase, use, incorporation, sale, or development of products containing or depending on the accused NVIDIA hardware and software. Exhibit A. The requests were limited in time to the relevant damages period in the underlying case, from September 13, 2018 to the present, and limited in scope to U.S.-based or U.S.-directed activity. *Id.*

Microsoft served objections on November 13, 2025. *See* Portuguese Decl., Exhibit C. Microsoft objected to the place of compliance because it was more than 100 miles from Microsoft's headquarters in Seattle, Washington. *Id.* at 4. As to the substance of the requests, Microsoft refused to search for or produce documents responsive to any request for production. *See generally id.*

**3.      NAI's Meet-and-Confer Efforts and Narrowing and Microsoft's Continued Non-Compliance**

The parties first met and conferred on November 19, 2025. At that time and Microsoft's request, NAI agreed to seek additional information from NVIDIA first. NVIDIA subsequently

produced documents and information confirming that Microsoft is a significant NVIDIA customer but containing gaps about how Microsoft actually used itself or bundled, configured, and sold the accused products to its customers.

Shortly after NAI had received documents confirming that Microsoft was a significant NVIDIA customer and partner, Neural AI re-engaged Microsoft on April 3, 2026, and the parties conferred again on April 13, 2026. On April 27, 2026, NAI substantially narrowed the subpoena to nine priority requests (Nos. 5, 7-10, 12-14, and 19). *See* Portuguese Decl., Exhibit D at 4-6. At the same time, NAI provided more detailed descriptions of the accused functionality and the type of bundling of NVIDIA hardware and software NAI is interested in and, to help Microsoft in its search for responsive information, identified the specific NVIDIA hardware products Microsoft had acquired during the relevant period. The parties met and conferred again on May 21 but, as of that meet and confer, Microsoft still had done little to no investigation into how it uses the NVIDIA products it purchased or what responsive documents it may have.

On June 4, 2026, Microsoft's counsel wrote by email that Microsoft was still "in the process of making our way through the orgs" and "figuring out whether and where they have the information." *See* Exhibit D at 1. But for the first time—over 7 months after Microsoft received the subpoena—Microsoft finally stated it "had the lay of the land" and would "complete a reasonable search and provide you with what we're able to find three weeks from tomorrow." *Id.* The parties conferred on June 5, at which time NAI learned that Microsoft's commitment to search for documents was illusory. Microsoft still did not know if the information it was compiling was "garbage or not" and could not commit that it would actually produce any responsive documents at the conclusion of its three-week search.

### 4. Procedural History

On June 1, 2026, while the parties were continuing to meet and confer, NAI sent Microsoft

a dispute chart pursuant to Section IV of the Court's March 5, 2025, Standing Order Governing Proceedings (OGP)—Patent Cases ("OGP"). Because Microsoft was a third party to the underlying dispute, NAI asked Microsoft to respond to the dispute chart in 7 days, rather than the 3 days contemplated in the OGP. On June 9, 2026, NAI sent an updated dispute chart taking into account the information Microsoft provided on the parties' most recent meet and confer. Microsoft completed its portion of the dispute chart on June 12, 2026. It objected to the dispute chart process and jurisdiction as threshold issues and on the merits.

NAI submitted the dispute chart to the Court on June 15, 2026. The Court held a hearing on the dispute chart on June 17, 2026. At the hearing, the Court instructed NAI to file a motion to compel, rather than use the dispute chart process. *See* Portuguese Decl., Exhibit E at 37:14-38:6.

**B.     THE COURT HAS JURISDICTION OVER THIS DISPUTE BECAUSE THE PLACE OF COMPLIANCE IN AUSTIN IS PROPER.**

The District Court for the Western District of Texas is the proper court to resolve Neural AI's motion to compel because Rule 45 directs the serving party to seek an order compelling production in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i); *see also Meritage Homes, LLC v. AIG Specialty Ins. Co.*, No. 1:23-MC-00944-DII, 2024 WL 221448, at *4 (W.D. Tex. Jan. 18, 2024); *Philadelphia Indem. Ins. Co. v. Odessa Family YMCA*, No. 7:20-CV-00134-DC, 2020 WL 6484069, at *1 (W.D. Tex. June 26, 2020). The place of compliance for the subpoena at issue is Planet Depos – Downtown Austin c/o Lexitas Legal, 100 Congress Ave., Ste. 2000, Austin, Texas 78701, which is located within this District. This Court's jurisdiction, then, turns on whether the place of compliance listed in the subpoena is proper. *See* Exhibit E at 32:3-5 (Microsoft agrees with NAI that the analysis "boils down to whether the place of compliance is correct.").

4

For document subpoenas, Rule 45(c)(2)(A) permits production "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." The issuing party is not limited to selecting a place of compliance only within 100 miles of the recipient's headquarters. *See, e.g.*, *Conservation L. Found., Inc. v. Equilon Enters. LLC*, No. CV 17-396-WES, 2025 WL 2821238, at *1 (D.R.I. Oct. 3, 2025) (rejecting argument that the place where an entity "regularly transactions business in person" is limited to the corporate headquarters because it "ignores the plain language of the Rule."). Rule 45 could have stated such a narrow requirement, but it did not. Instead, the Rule allows for a place of compliance within 100 miles of any location where the recipient transacts business in person. For a company like Microsoft that conducts significant business nationally, a party issuing a subpoena has many choices.

The place of compliance is not limited to a location where potential document custodians are located. First, such a rule is logically non-sensical because the party serving the subpoena cannot know where the custodians possessing relevant documents are located before serving the subpoena. Rule 45 cannot require that a party serving a subpoena on a large, nation-wide company play a guessing game with the compliance location and cross its fingers that the custodian with documents responsive to its subpoena is located near the place of compliance, rather than at a regional office across the country. Second, courts routinely reject this very argument. *See, e.g.*, *Velocity Pat. LLC v. FCA US LLC*, No. 13 CV 8419, 2017 WL 11893112, at *4 (N.D. Ill. Nov. 2, 2017) (holding that the place of compliance was proper within 100 miles of any of the subpoena target's regional offices or facilities and rejecting argument that, "regardless of its other locations," its headquarters was the "only location where it stores" requested documents); *Trs. of Bos. Univ. v. Everlight Elecs. Co.*, No. 12-CV-11935-PBS, 2014 WL 12792496, at *3 (D. Mass. Sept. 8, 2014) (holding that place of compliance in Boston was proper because Apple had two offices and

5

four retail locations in Massachusetts and rejecting Apple's argument that its headquarters and relevant documents are in Cupertino, California). "Rule 45(c) says nothing about the location of documents subpoenaed." *Trs. of Bos. Univ.*, 2014 WL 12792496, at *3.

Microsoft's argument that it can produce documents only within 100 miles of its Seattle, Washington headquarters makes even less sense given its role as one of "the largest cloud infrastructure providers in the country." Exhibit E at 36:11-15. Information stored on the cloud, rather than on local hard drives, can be accessed from anywhere, including by Microsoft's employees in the Austin location. Given recent technology advances, largely driven by Microsoft's own cloud business, it is a fiction that Microsoft would physically produce documents at the Austin address listed as the place of compliance; of course, Microsoft will send responsive documents to NAI electronically. But even if Microsoft had to produce physical documents, its Austin-based employees could access the documents remotely, print them out, and deliver them within the same city from Microsoft's Austin office to the place of compliance.

Here, the Austin place of compliance satisfies Rule 45(c)(2)(A). Microsoft regularly transacts business in person in Austin through its corporate office in the same city as the place of compliance. This corporate office location is not empty or dormant. Microsoft's own job postings reflected 46 open Austin positions as of June 23, 2026. *See* Exhibit B; *see also Linet Americas, Inc. v. Hill-Rom Holdings, Inc.*, No. 21-cv-6890, 2025 WL 889579, at *4 (N.D. Ill. Jan. 27, 2025) (relying on the subpoena recipient's job postings for positions in Chicago to find that a place of compliance within 100 miles of Chicago was proper). Because the subpoena's listed place of compliance in Austin is proper, this Court has jurisdiction to resolve this motion to compel.

## C. MICROSOFT MUST PRODUCE DOCUMENTS RESPONSIVE TO THE SUBPOENA.

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery regarding

6

any nonprivileged matter that is relevant to the parties' claims or defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Where, as here, a non-party refuses discovery in response to a validly issued subpoena, Federal Rule of Civil Procedure 45 provides the Court for the district where compliance is required with broad discretion to compel the production of documents and information from third parties. Fed. R. Civ. P. 45(d)(2)(B)(i); *Waller v. Jet Specialty, Inc.*, No. 23-CV-00121-DC-RCG, 2024 WL 7050192, at *1 (W.D. Tex. Nov. 19, 2024). Once a party moving to compel discovery establishes that the materials are relevant or will lead to the discovery of admissible evidence, the burden rests upon the nonparty resisting discovery to substantiate its objections. *611 Carpenter LLC v. Atlantic Casualty Ins. Co.*, 2024 WL 1977160, at *1 (W.D. Tex. April 30, 2024) (granting party's motion to compel non-party subpoena). The non-party "must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is overly broad and burdensome." *Id.*

      1.    **The subpoenaed materials are relevant and proportional to the needs of the case.**

Neural AI's narrowed requests seek documents that are directly relevant to proving how NVIDIA's accused GPU-acceleration technology is deployed and used in real-world systems. Microsoft is one of NVIDIA's most significant customers and a large-scale integrator of the accused hardware and software. Publicly available information on Microsoft's website indicate that Microsoft and NVIDIA have a deep partnership, collaborating to "enable[] more conversational AI solutions, further integrating hardware and software solutions and making AI more accessible and easier to use."[1] *See* Portuguese Decl., Exhibit F at 1.

The narrowed requests target nine specific categories of documents:

---

[1]    NVIDIA's confidential documents also demonstrate the close relationship between NVIDIA and Microsoft, but NAI cites only public documents to avoid the need for sealing.

- RFP 5 seeks documents sufficient to identify Microsoft's products or services that depend on the accused technology.

- RFPs 7, 8, 9 and 10 seek technical documents, source code, configuration files, development notes and other documents sufficient to show how Microsoft's products or services implement, incorporate, use, integrate, invoke, or interact with the accused NVIDIA products.

- RFP 12 seeks communications with NVIDIA relating to the setup, integration, customization, support, or use of the accused NVIDIA products.

- RFP 13 seeks Microsoft's internal documents or reports reflecting the benefits or business value derived from its use of the accused NVIDIA products.

- RFP 14 seeks the revenue, usage, or subscription data for Microsoft's products or services that relied on accused NVIDIA products.

- RFP 19 seeks internal engineering documentation sufficient to show the design, development, or operation of Microsoft's products that use, incorporate, or were developed in connection with accused NVIDIA products.

*See* Exhibit A. Each category is directly relevant to proving how the accused products operate in commercial deployments and how Microsoft's systems interact with NVIDIA's GPU-acceleration software—including CUDA, TensorRT, and PyTorch with CUDA. In fact, the Court already determined that these same requests are relevant in the context of a discovery dispute with Dell, another NVIDIA customer. *See* Exhibit E at 22:4-20 ("As I see these requests for production, I do believe that they are targeted to relevant information. . . . I believe the documents that identify and include that information, at least to an extent, are relevant to the underlying lawsuit. And that same thought permeates through all of these.").

These materials are also uniquely in Microsoft's possession. NVIDIA has already confirmed that it does not possess information about how its customers use its products. *See* Portuguese Decl., Exhibit G at 22:2-11. Internal integration materials, architecture documents, implementation artifacts, internal communications, and revenue and usage data showing real-world deployment of the accused technology exist only in Microsoft's files. Neural AI cannot obtain equivalent information from any other source.

The requests are proportional to the needs of the case. Neural AI has narrowed from a broader initial set to nine priority requests. Neural AI further narrowed the focus to three combinations of NVIDIA products: use of an NVIDIA GPU in combination with (1) an original, custom, or modified version of PyTorch using CUDA; (2) TensorRT; and (3) applications that utilize PyTorch with CUDA or TensorRT. *See* Exhibit D at 5. Meanwhile, the temporal scope (September 13, 2018 to present) tracks the relevant damages period, and the requests are limited to U.S.-based or -directed activity. Given the importance of the issues at stake and the amount in controversy in the underlying patent infringement action, the narrowed requests are proportional.

2.      **Microsoft's burden objections are unsupported.**

To start, Microsoft's written objections to burden are inadequate because they do not "state with specificity" the burden Microsoft would face in producing responsive documents. *611 Carpenter LLC*, 2024 WL 1977160, at *1. The boilerplate objections, absent evidence of burden, do not show that the burden of complying with the subpoena is undue and cannot outweigh the relevance of the discovery sought.

Further, NAI has taken reasonable steps to minimize Microsoft's burden. NAI spent months pursuing information directly from NVIDIA to avoid the need to obtain the same from Microsoft. For example, NAI withdrew the initial RFP 1 ("Documents sufficient to identify all types of NVIDIA [hardware] purchased, acquired, or deployed by You.") because it obtained data regarding Microsoft's purchases from NVIDIA itself. Further, even for requests for documents only within Microsoft's possession, NAI prioritized its requests and agreed to narrow the subpoena to only 9 RFPs, most of which are requests only for documents "sufficient to show" the requested information. At the same time, NAI provided Microsoft with information that NAI thought would facilitate the investigation, including (1) a detailed explanation of the specific software and hardware combinations that NAI alleges infringes and (2) a list of the accused products Microsoft

9

purchased from NVIDIA during the relevant period so that Microsoft could search for information about those specific products. NAI also regularly offered that it was willing to discuss and work through any burden-related issues Microsoft encountered in its investigation, but to this day, Microsoft has never articulated a specific hardship in responding to the subpoena, as opposed to general allegations that the subpoena requests are too broad.

**3.      Microsoft cannot continue to defer production with vague promises.**

As described above, NAI has been patient and cooperative with Microsoft. But the fact discovery deadline in the underlying case is now less than two months away. Microsoft's vague promise to look into the matter and search for undefined documents—made for the first time on June 4, 2026—is insufficient. NAI had no choice but to seek the Court's intervention. Given the upcoming discovery deadline, NAI suggests that the Court require Microsoft to begin producing documents within 7 days of the Court's order on this motion and to complete production by no later than Friday, July 24, 2026.

For the foregoing reasons, NAI respectfully requests that this Court (1) overrule Microsoft's place-of-compliance objections and hold that this Court has jurisdiction over this motion; (2) compel Microsoft to produce non-privileged documents responsive to Neural AI's nine priority subpoena requests—RFPs 5, 7-10, 12-14, and 19; (3) require Microsoft to begin rolling production within 7 days of the Court's order on this motion and to complete production by Friday, July 24, 2026; and (4) require Microsoft to serve a privilege log compliant with Fed. R. Civ. P. 45(e)(2) and 26(b)(5) for any responsive materials withheld on privilege or work-product grounds, concurrent with its final production.

Dated: June 24, 2026

Respectfully submitted,

 /s/ *Mark Siegmund*
Mark D. Siegmund
Texas State Bar No. 24117055
CHERRY JOHNSON SIEGMUND
JAMES PC
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
msiegmund@cjsjlaw.com

Max L. Tribble
Texas State Bar 20213950
Brian D. Melton
Texas State Bar 24010620
Rocco Magni
Texas State Bar 24092745
Samuel Drezdzon
Texas State Bar 24117374
SUSMAN GODFREY L.L.P.
1000 Louisiana
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
bmelton@susmangodfrey.com
rmagni@susmangodfrey.com
sdrezdzon@susmangodfrey.com

Tamar Lusztig
NY State Bar 5125174
Emily Portuguese
NY State Bar 5920327
One Manhattan West, 50th Floor
New York, NY 10001
tlusztig@susmangodfrey.com
eportuguese@susmangodfrey.com

Tanner Laiche
WA State Bar 60450
401 Union Street, Suite 3000

11

Seattle, WA 98101
tlaiche@susmangodfrey.com

Max Ciccarelli
Texas State Bar No. 00787242
CICCARELLI LAW FIRM LLC
100 N. 6th Street, Suite 502
Waco, Texas 76701
Max@CiccarelliLawFirm.com

*Attorneys for Petitioner Neural AI, LLC*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing document was served on all parties via electronic mail on this 24th day of June 2026.

*/s/ Mark D. Siegmund*
Mark D. Siegmund

12