**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **NEURAL AI, LLC,** | |
| **Petitioner,** | **Case No. 7:26-mc-00242** |
| v. | **[Underlying Case: USDC Western District of Texas No. 7:24-cv-00221-ADA-DTG]** |
| **MICROSOFT CORPORATION,** | |
| **Respondent.** | |

**MEMORANDUM IN RESPONSE TO PETITIONER'S MOTION TO COMPEL**
**COMPLIANCE WITH SUBPOENA SERVED ON THIRD-PARTY MICROSOFT**
**CORPORATION**

**I.      INTRODUCTION**

Neural AI, LLC's ("NAI") Motion should be denied because (1) the subpoena is invalid on its face, having a place of compliance in violation of Rule 45, and (2) it fails to present a ripe dispute before this Court on any of the requests. First, Rule 45 required NAI to set the place of compliance in the Western District of Washington, where Microsoft Corporation ("Microsoft") is headquartered and has the required information. Failing to do so makes the subpoena invalid on its face, and unenforceable. Second, NAI does not present a ripe dispute before this Court. Microsoft's initial objections stated that it needed additional information to conduct a search. On the parties' initial meet and confer, NAI did not dispute that and agreed to provide that information. After five months of silence, NAI provided that information on April 27, 2026. In the short period of time between then and when NAI first sought to compel Microsoft, the parties on multiple instances met and conferred and discussed Microsoft's production. Namely, based on a reasonable search, because Microsoft did not keep documents containing the information NAI sought, Microsoft offered to compile data and produce NAI a table identifying the approximate volumes of accused chips configured in the relevant ways. The parties' subsequent discussion focused solely on the timing of that production, not its adequacy. Microsoft has since made that production, thus mooting the only issues on which the parties have met and conferred. To the extent NAI

1

intends its Motion to cover any other request, it fails to carry its burden to establish relevance and fails to fulfill its obligation to meet and confer. Accordingly, Microsoft requests the Court deny NAI's Motion.

## II.      FACTUAL BACKGROUND

### A.      The Parties' Meet and Confers and Microsoft's Search.

On October 15, 2025, NAI served its subpoena containing 20 requests amounting to discovery akin to that which would be served on a party in patent litigation. Dkt. 1-3. For example, request 16 sought "Marketing, customer-facing, or internal communications describing or referencing Your reliance on NVIDIA GPU-Acceleration Software and NVIDIA GPU-Acceleration Hardware or toolkits for performance, scalability, or innovation" and request 12 sought "Communications between You and NVIDIA relating to the setup, integration, customization, support, or use of any NVIDIA GPU-Acceleration Software." *Id.* at 19–20. The subpoena set the place of compliance as Austin, Texas. *Id.* at 2. On November 13, 2025, Microsoft objected that NAI's requests were facially overly broad and unduly burdensome, sought irrelevant information, and importantly stated that Microsoft needed more information before it could even conduct a search. *See generally* Dkt. 1-5. Microsoft further objected "to the subpoena as improper because the demanded place of production is not within 100 miles of Redmond, Washington, where Microsoft resides and regularly transacts business in person." Dkt. 1-5, at 5.

On November 19, 2025, the parties met and conferred, and Microsoft "explained that we needed more information to conduct a search[,]" including at a minimum the identification of relevant products and the information NAI sought about those products that was unavailable from NVIDIA. Dkt. 1-6, at 9. NAI responded that it was "still pursuing discovery from defendant and were working to better identify the products it supplied to . . . that were relevant, as well as what [it] needed from [Microsoft] about those products that [it] couldn't get from defendant." *Id*. On April 3, 2026, NAI asked Microsoft for an update, including whether "Microsoft will search for and produce documents responsive to each of the subpoena requests." Dkt. 1-6, at 10. On April 6, 2026, Microsoft reminded NAI that it was awaiting the information NAI agreed to provide months.

*Id*. at 9 (Microsoft stating that "[w]hen we last spoke five months ago, we explained that we needed more information to conduct a search" and NAI "agreed to circle back with us once you had that information.").

On April 13, 2026, the parties again met and conferred, and Microsoft again reminded NAI's counsel what it had agreed to provide the previous November. Dkt. 1-6, at 6. On April 27, 2026, for the first time, NAI provided Microsoft with the listing of relevant products, and the configuration that it contended was relevant in its litigation with NVIDIA. *Id*. at 5–6.

On May 21, 2026, the parties met and conferred, and Microsoft shared its findings from its preliminary investigation: the accused computer chips were potentially used in many places across the company, and tracking down each one, how it was used, and how it was configured was not meaningfully possible. Declaration of Benjamin J. Byer ("Byer Decl.") ¶ 3. Namely, asking a cloud provider to track down many thousands of GPUs is akin to asking an automative company to track down every wrench and produce documents showing how each was used. Microsoft asked NAI whether it could narrow or focus its requests in any way. *Id*. It refused and stated it would simply go to the court rather than meaningfully confer. *Id.* Microsoft nonetheless agreed to look for ways to provide information about the approximate volume of the accused products that were used in one of the three identified configurations. *Id*. NAI requested it provide a date certain it would have this volume information, but did not request any other information. Microsoft explained that since NAI had only just provided the information needed to begin the search, Microsoft could not commit to when it would be completed.

**B.      NAI Files a Discovery Dispute In the Underlying Case and Then Files This Motion.**

On June 1, 2026, true to its word, rather than engage in any discussion, NAI simply sent Microsoft a discovery dispute chart and demanded Microsoft either respond to the chart or "confirm in writing by June 8 what categories of documents [it] will agree to search for and produce . . . along with the timeline for completing that production." Dkt. 1-6, at 2–3. On June 4, 2026, Microsoft responded that it would agree to compete the reasonable search the parties had

3

discussed and provide the results "three weeks from tomorrow [i.e., June 26, 2026]." *Id.* at 2. In a final effort to look for a cooperative resolution, Microsoft again requested a meet and confer. *Id.*

On June 5, 2026, the parties met and conferred, and Microsoft explained that based on a reasonable search it did not have documents that provided company-wide visibility into the usage NAI sought, but offered as an alternative to conduct a search and compile into a spreadsheet data showing for accused NVIDIA GPUs the approximate volume configured in one of the three confirmations NAI identified as relevant. Byer Decl. ¶ 4. When Microsoft asked NAI's counsel whether it felt Microsoft should be doing anything more, "NAI was unable to identify anything it believed [Microsoft] should be doing that it hadn't already agreed to do." Byer Decl., Ex. A, at 1. Although Microsoft was "conducting the search [the parties] discussed—tracking down where, how, and in what volume the accused GPUs are used[,]" NAI refused to withdraw its discovery dispute chart. Byer Decl., Ex. A, at 2.

On June 17, 2026, the Court held a hearing for the discovery disputes NAI had with Dell, Amazon, and Microsoft, all of whom NAI had served with similar subpoenas. Dkt. 1-7. When addressing NAI's dispute with Dell, the Court stated that "the scope of some of [the requests] – in many of them is probably more broad than necessary" and that the requested discovery "could easily become disproportionate to the benefits that would be obtained from the information." Byer Decl., Ex. B (June 17, 2026 Tr. of Disc. H'rg ("Transcript") at 22:6-7; 23:3-5). It therefore ordered Dell and NAI to meet and confer to more precisely define their dispute. Byer Decl., Ex. B (Transcript at 24:4-6).

At the hearing, Microsoft's counsel explained it had agreed to produce by June 26 as the parties had discussed and confirmed its commitment to work with NAI if it felt it had missed something. Byer Decl., Ex. B (Transcript at 34:10-35:22). The Court also agreed with Microsoft that the discovery dispute statement was the improper mechanism to hear the dispute given Microsoft's objection to it. On Wednesday, June 24, 2026—two days before Microsoft's agreed production—NAI filed this Motion. On June 26, 2026, Microsoft made its agreed production. Byer

Decl. ¶ 5. NAI has neither requested a meet and confer nor identified anything it believes is missing from Microsoft's production.

### III.    ARGUMENT

NAI's Motion should be denied for two reasons. First, the underlying subpoena fails to identify a place of compliance that satisfies Rule 45's restriction. Second, it fails to present a ripe dispute for this Court.

### A.    NAI Has Moved to Compel in The Wrong District.

Rule 45 permits a requesting party to set the place of compliance "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). NAI does not argue Microsoft is a resident of Texas or that it is somehow employed there. It instead claims Microsoft "regularly transacts business" within 100 miles of Austin because it has a corporate office and unrelated job postings in Austin. Rule 45 does not permit a requesting party to paint with such broad brush, forcing a non-party to produce documents at a location having no connection to the documents requested.

Under Rule 45, the only relevant business activities are those tethered to the location of the nonparty's headquarters and the location where "***custodians*** of records reside, are employed, and regularly transact business in person." *Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018) (emphasis added) (motion to compel against Google to heard in the District where non-party was headquartered and custodians of records reside in that District); *see also Procaps S.A. v. Patheon Inc.*, 2015 WL 1722481, at *3 (S.D. Fla. 2015) ("Because [the non-party corporation] is headquartered in Parsippany, N.J., [the place of compliance] is the District of New Jersey."); *Burnett v. Wahlburgers Franchising LLC*, 2018 WL 10466827, at *2 (E.D.N.Y. 2018) (concluding that "the proper forum for the motion to compel would be in the district in California where the nonparty's headquarters are located, not where the files are to be produced."). Courts in Texas follow this rule. *In re Xiaomi Tech. Netherlands B.V.*, 2025 WL 3068736, at *12 (E.D. Tex. 2025) (following *Europlay*'s analysis and concluding that compliance was proper at the non-party's "principal place of business"). In other words, the question is not where an entity is

somehow employed or regularly transacted business in person, but where the custodians of records are employed or regularly transacted business in person. This follows from a plain reading of Rule 45, as it makes no sense to consider an entity's employment or where it conducts business "in person."

As a result, courts have squarely rejected the argument that the existence of a Microsoft office within a district makes that district a proper Rule 45 place of compliance, concluding instead that compliance for Microsoft must be set in "the Western District of Washington." *Dellaportas v. Shahin*, 2025 WL 3019810, at *1–2 (S.D.N.Y. Oct. 29, 2025), *adhered to on reconsideration,* 2025 WL 3456400 (S.D.N.Y. Dec. 2, 2025) (finding that a motion to compel against Microsoft should be heard in the district where the "employees who would be responsible for searching and producing information responsive to Plaintiff's subpoena are."). NAI argues that a place of compliance is where a party has job postings. Mot. at 6 (citing Dkt. 1-4). This argument misses the point. NAI cites no evidence that any of those job posting suggest custodians of relevant information are located in Texas. NAI has failed to carry its burden to show it has satisfied Rule 45 and its subpoena is enforceable in this District. *See Cruz v. AerSale, Inc.*, 2025 WL 1426884, at *4–6 (D.N.M. 2025) (denying motion to compel where the movant failed to establish the court of compliance).

### B.      NAI Fails to Present a Ripe Dispute.

NAI's discovery requests fall generally into two buckets: (1) requests for technical information regarding Microsoft's use of the accused GPUs, and (2) requests for internal emails, internal documents, and Microsoft financial information. NAI's motion should be denied on both fronts. Microsoft has already produced the technical information the parties discussed during the meet and confers. On the remaining requests, NAI fails to satisfy its burden to show relevance, fails to refute Microsoft's objections, and the parties have never met and conferred on these requests.

1.    **Microsoft Has Already Produced the Sole Technical Material the Parties Discussed.**

On June 5, 2026, Microsoft explained that based on a reasonable search it did not have responsive documents kept in the ordinary course of business that provided company wide data on the configurations NAI sought discovery on. Byer Decl. ¶ 4. But rather than stand on its objections, Microsoft agreed to satisfy NAI's technical requests by instead searching for and compiling data to create a document that would identify the accused NVIDIA GPUs used in the accused manner, and their relevant volumes. *Id*. NAI never requested Microsoft do anything else. Byer Decl., Ex. A, at 1. On June 26, 2026, Microsoft produced that information. Byer Decl. ¶ 5. To the extent NAI believed additional information was called for, Microsoft also offered to meet and confer with NAI to understand what, if anything, it contended it needed from Microsoft to address its technical requests (e.g., RFPs 5, 7, 8, 9, 10, and 19). NAI has neither identified any deficient in Microsoft's production, or requested a meet and confer. Byer Decl. ¶ 6. Although Microsoft remains willing to do so, any dispute falling from such a hypothetical future meet and confer falls outside a motion NAI strategically filed before Microsoft's production.

2.    **NAI fails to Present Any Ripe Dispute on the Remaining Requests.**

NAI's Motion also appears to request Microsoft be compelled to provide additional, non-technical information. Although its motion does not discuss such materials, RFP 12 requests "communications between [Microsoft] and NVIDIA" relating to the accused NVIDIA products, RFP 13 requests Microsoft's "[i]nternal documents" regarding the Accused Products, and RFP 14 seeks "[r]evenue, usage, or subscription data" for Microsoft services or software platforms related to the Accused Products. Dkt. 1-3, at 18–20. Microsoft timely objected to these requests because, among other things, they sought information not relevant to either party's claims or defenses. Dkt. 1-5, at 19-20. To the extent NAI contends its motion covers such materials,[1] that portion of its Motion would fail for three reasons.

---

[1] NAI appears to have withdrawn its similar requests against Dell, so it is unclear whether it intends to pursue these requests here, particularly since its Motion does not acknowledge they exist, much less make any attempt to justify them. Byer Decl., Ex. C.

First, Microsoft has specific objections to these requests as covering irrelevant information. For example, RFP 12 requests a broad set of communications that NAI has not demonstrated are relevant or proportional to the issues in this case. As Microsoft stated in its objection, requests for email communications are particularly burdensome. Dkt 1-5, at 18-19; *Hedgeye Risk Mgmt., LLC v. Dale*, 2023 WL 4353076, at *2 (S.D.N.Y. 2023) ("all . . . communications" that relate to multiple categories of records "often is a red flag for overbreadth and undue burden." (citation omitted)); *Chinitz v. Realogy Holdings Corp.*, 2020 WL 6265083, at *3 (W.D. Tex. 2020) (similarly denying a motion to compel requests for "all communications" as "facially overbroad"). Indeed, even in party discovery, "[e]mail discovery is not presumptively relevant to [patent] litigation," and "'overbroad email production requests, carry staggering time and production costs that have a debilitating effect on litigation.'" *Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc.*, 2019 WL 121195, at *3 (C.D. Cal. 2019) (quoting Introduction to Model Order Regarding E-Discovery in Patent Cases at p. 2 (Fed. Cir. 2011)); *see also* Standing Order Governing Proceedings (OGP) 4.4-Patent Cases, p. 3 (noting that "the Court will not require general search and production of email or other electronically stored information (ESI) related to email (such as metadata), absent a showing of good cause."). Microsoft likewise objects that its internal documents and financial records that would post-date any hypothetical negotiation of a royalty between NAI and NVIDIA have no relevance to the underlying lawsuit. *SPH Am., LLC v. AT&T Mobility, L.L.C.*, 2016 WL 11783677, at *2 (S.D. Cal. 2016) (denying motion to compel because the party failed to show any relevance as to the *Georgia-Pacific* factors).

Second, the parties have never met and conferred on Microsoft's objections. All of the parties meet and confers focused solely on the timing of Microsoft producing a report showing the approximate volume of accused GPUs configured in the accused way. *See supra* § II.B. Local Rule CV-7(g) states that the Court "may refuse to hear or may deny a nondispositive motion unless the movant advises the court within the body of the motion that counsel for the parties have conferred in a good-faith attempt to resolve the matter by agreement and certifies the specific reason that no agreement could be made." Conferring in good faith "means that the parties must genuinely

8

attempt to resolve the dispute without judicial intervention, and not to treat their negotiations simply as a formal prerequisite for judicial review." *Perkins v. United States Parcel Serv. of Am., Inc.*, 2024 WL 1493808, at *1–2 (W.D. Tex. 2024) (citation omitted). Courts deny motions to compel for failing to meet and confer because they do not precisely present a dispute to the court. *Id.*; *see also Diaz v. Cuatro T Constr., Inc.*, 2021 WL 2709681, at *1 n.1 (W.D. Tex. 2021). Because the parties have *never* conferred on those other document requests, the portion of NAI's Motion addressing them should be denied.

Third, NAI admits as the moving party it has the burden to establish "that the materials are relevant or will lead to the discovery of admissible evidence," Mot. at 7, but it has failed to carry its burden. *Hobbs v. Petroplex Pipe & Constr., Inc*., 2018 WL 3603074, at *2 (W.D. Tex. 2018) (noting that the moving party has the burden to establish relevance). NAI's sole relevance argument is a single sentence alleging that its requests are "directly relevant to proving how NVIDIA's accused GPU-acceleration technology is deployed and used in real-world systems[,]" and "to proving how the accused products operate in commercial deployments and how Microsoft's systems interact with NVIDIA's GPU-acceleration software—including CUDA, TensorRT, and PyTorch with CUDA." Mot. at 7. At most, this justifies its technical requests that Microsoft has produced on. NAI is entirely silent about how internal email, internal documents, of Microsoft's financial information would have any relevance.[2] Although NAI cites the RFPs that encompass those documents, it does not identify what they cover or make any effort to carry its burden to establish relevance. To the extent NAI intends to move on requests encompassing internal documents, email, and financial information, this portion of its motion should also be denied. *El Paso Disposal, LP v. Ecube Labs Co*., 2025 WL 1879607, at *3–6 (W.D. Tex. 2025)

---

[2] Rule 45 "provides additional protections where a subpoena seeks trade secret or confidential commercial information from a nonparty," requiring a higher showing of "substantial need." *Vinton Steel, LLC. v. Com. Metals Co.*, 2023 WL 2518881, at *3 (W.D. Tex. 2023) (citation and internal quotation marks omitted). Microsoft objected because NAI's requests asked for Microsoft's confidential documents and trade secrets, Dkt. 1-5, at 5, 18–21, but NAI does not address its "substantial need" for the information.

(denying a motion to compel because moving party made "conclusory arguments about relevance" without sufficient explanation or consideration for the burden on the non-party).

## IV.    CONCLUSION

For the reasons stated above, the Court should deny NAI's Motion.

DATED this 1st day of July, 2026.

> Davis Wright Tremaine LLP
> Attorneys for Microsoft Corporation
>
>
> By: /s/ Andrew T. Gorham
> Andrew Thompson ("Tom") Gorham
> State Bar No. 24012715
> GILLAM & SMITH, L.L.P.
> 7232 Crosswater Avenue
> Tyler, Texas 75703
> Telephone: (903) 934-8450
> Facsimile: (903) 934-9257
> Email: tom@gillamsmithlaw.com
>
> Ben Byer (*pro hac vice forthcoming*)
> WSBA # 38206
> Angelo Marchesini (*pro hac vice forthcoming*)
> WSBA # 57051

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on this the 1st day of July, 2026 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Andrew T. Gorham*