# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| NEURAL AI, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NVIDIA CORPORATION,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 7:24-cv-00221-LS-DTG |

**NEURAL AI, LLC AND THIRD-PARTY DELL INC.'S SUBMISSION TO THE COURT IN RESPONSE TO THE COURT'S ORDER AT ECF 168**

Plaintiff Neural AI, Inc. and Dell Inc. submitted a discovery dispute chart, and the Court held a hearing on that chart on June 17, 2026. The Court ordered that the Neural AI and Dell to meet and confer and provide a statement about the scope of any agreement that has been reached or each parties' position regarding each request for production. As directed by the Court, each of the requests for production is set out below with a statement about the scope of any agreement that has been reached or each parties' position regarding each request for production

1. Documents sufficient to identify any products, features, or services offered or internally deployed by You during the relevant period that integrate, incorporate, or use any NVIDIA GPU-Acceleration Software and NVIDIA GPU-Acceleration Hardware.

**Neural AI Comments**: NAI appreciates Dell's new position agreeing to provide additional documents in response to RFP 1. Dell's response below references both a dozen customers to whom Dell has sold an installation package and another 200-300 customers who purchased services packages related to NVIDIA software. Dell agrees below to search for—though makes no commitment to produce— Statements of Work (though not other documentation) for the former

but does not agree to search for any documents for the 200-300 customers obtaining services packages. Instead, Dell asserts that documentation detailing configurations would be burdensome—without any explanation of why it would be burdensome. Setting aside the lack of detail, this Request only seeks documents sufficient to identify the services performed for both categories—the dozen customers who received installations and the 200-300 customers who purchased services packages—that relate to the NVIDIA GPU-Acceleration Software and NVIDIA GPU-Acceleration Hardware, without regard to the specific configuration information.

Dell's characterization of NAI's request for the "services package" documents as a "fishing expedition" strains credulity. Dell suggests that if the "services package" does not involve installation then it must be irrelevant. Not so. Dell could be performing ongoing coding or ongoing integration work that could implicate the claims, such as defining how the software controls the NVIDIA GPUs, a related CPU, their memory, or all of the above. It should be noted that Dell has provided no detail regarding what activities are included in the "services package" and mentioned it for the first time in this filing. Dells says the "services package" documents need not be produced because the production of statements of work are sufficient. Yet the position makes little sense, given the statements of work do not overlap with the work performed under the "services packages," as Dell itself explains. So how could the statements of work identify the unrelated work under the services packages? They cannot. Ultimately, the RFP seeks documents sufficient to show each type of service and product Dell offers related to the NVIDIA GPU-Acceleration Software and NVIDIA GPU-Acceleration Hardware; Dell's "installation only" objection improperly narrows the request.

Further, NAI asks the Court to reject Dell's request to redact the names of its customers. This case involves claims of indirect infringement against NVIDIA. The names of the end-user

customers allow NAI to connect Dell's installation configurations to end-users practicing the patents in suit. Dell objects by pointing to its contractual obligations. But nondisclosure agreements typically are read to include an exception for court orders.

Finally, Dell's response provides no timeframe for production and only agrees to search for documents. This is particularly concerning since Dell appears to have only recently—after the court-ordered meet and confer—begun investigating the scope of products and services it offers with regard to the NVIDIA GPU-Acceleration Software and NVIDIA GPU-Acceleration Hardware. Given that the subpoena has been outstanding since October and NAI has been actively seeking a production of documents since April, NAI asks the Court to require production within 14 days.

**Dell Comments**: As for "products," Dell has determined that Dell has not shipped products with the accused NVIDIA software already installed. Dell customers have purchased the accused NVIDIA software from Dell, and ***Dell has produced a spreadsheet at DELL-000001 showing the number of purchases by quarter***. For vast majority of these software purchases, the customer itself installs the software.

Dell has sold an installation package for NVIDIA software for about one dozen customers. ***Dell will search for documents showing Dell's agreed "Statements of Work" with these customers (although Dell will redact customer names and identifying information because of confidentiality issues).*** Also, about 200-300 customers have purchased a services package for NVIDIA software from Dell, but Dell does not have any reasonable way to search for specific configuration information for these customers. And even if Dell could reasonably search for its customers' configuration information (it cannot), Dell would likely be required to provide notice

to those customers that their sensitive information may be produced in litigation—a highly burdensome process in itself.

Dell requests that the Court not adopt NAI's request that Dell search for documents showing the services performed for the 200-300 customers for whom Dell *did not sell an installation package* for the software at issue. This is truly a fishing expedition. This type of search is irrelevant, not proportional, and burdensome, considering that Dell cannot reasonably search for configuration information for these customers, and the installation and configuration of NVIDIA software was the purported purpose of NAI's third-party discovery in the first place. In addition, searching the records for over 200+ customers is exceptionally burdensome (if not impossible) and not appropriate for *third-party* discovery, especially considering that Dell will produce actual Statements of Work for customers for whom Dell has installed the software at issue, which was the point of NAI's purported discovery needs in the first place. And note that NAI arguments are premised on what "could be" found in a search. This justification is thin and not sufficient to support the proportionality of an onerous third party search (and would likely not be sufficient for party discovery). Production of the Statements of Work as offered by Dell are sufficient.

Dell also asks that the Court reject NAI's demand that Dell not be permitted to redact customer names. The names of the customers and the configuration of the customers' computer systems is confidential information to Dell's customers. Dell cannot disclose secret customer information to third parties through a third-party discovery request, especially without having the ability to notify those customers in advance. Also, Dell's confidentiality obligation, including the obligation to notify its customers, is contractual and not merely a preference on Dell's part. And, if Dell is compelled to search for and produce documents for the 200-300 customers for whom

Dell *did not sell an installation package*, Dell would have to notify these customers, creating an exceptionally burdensome task that is far beyond any proportionality associated with the needs of this case.

As for the timing of production, Dell will commit to producing as quickly as reasonably possible, but NAI's arbitrary deadlines are not appropriate, especially in view of NAI's behavior with respect to this subpoena and NAI's own lengthy delay in prosecuting this subpoena (including NAI's unilateral decision not to "get back with" Dell for four months with respect to this subpoena).

The foregoing is a reasonable resolution of RFP No. 1, including the additional search set out in ***bold and italics***.

2. Technical documentation, architectural diagrams, or internal presentations sufficient to show how You integrated, incorporated, or otherwise used the accused NVIDIA GPU-Acceleration Software in in the products, features, or services identified in response to Request No. 1 [originally Request No. 5].

**Neural AI Comments**:

How Dell integrates, incorporates, or otherwise implements the Accused Products and services identified in response to Request No. 1 is important to NAI being able to determine if Dell is combining NVIDIA software and hardware products in a manner that infringes the patents, and in turn how end-user customers are infringing the patents in suit. Documents responsive to this request are thus plainly relevant to NAI's claims of indirect infringement. The request is already tailored only to documents "sufficient to show" the configuration or bundling of products and does not seek *all* documents on this subject.

Given that the subpoena has been outstanding since October and NAI has been actively seeking a production of documents since April, NAI asks the Court to require production within 14 days.

**Dell Comments**:

Dell has sold an installation package for NVIDIA software for about one dozen customers. ***Dell will search for documents showing Dell's agreed "Statements of Work" with these customers (although Dell will redact customer names and identifying information because of confidentiality issues).*** Also, about 200-300 customers have purchased a services package for NVIDIA software from Dell, but Dell does not have any reasonable way to search for specific configuration information for these customers. And even if Dell could reasonably search for its customers' configuration information (it cannot), Dell would likely be required to provide notice to those customers that their sensitive information may be produced in litigation—a highly burdensome process in itself.

As for NAI's comments, with respect to the 200-300 customers have purchased a services package for NVIDIA software from Dell and the timing of production, Dell incorporates its comments from RFP No. 1.

The foregoing is a reasonable resolution of RFP No. 1, including the additional search set out in ***bold and italics***.

3. Source Code, configuration files, or implementation artifacts sufficient to show how the accused NVIDIA GPU-Acceleration Software was integrated into Your systems, applications, or software pipelines for products, features, or services identified in response to Request No. 1 [originally Request No. 5].

**Neural AI Comments**: NAI relies on the veracity of Dell's representation that it has no responsive documents for this Request.

**Dell Comments**: With regard to the installation or servicing of software for Dell customers, Dell does not maintain in the ordinary course of its business records of the specific NVIDIA software configurations for its customers. These configurations are performed in the customer's IT environment and are not saved by Dell. ***Dell has nothing to produce in response to RFP No. 3.*** And even if Dell could reasonably search for its customers' configuration information (it cannot), Dell would likely be required to provide notice to those customers that their sensitive information may be produced in litigation—a highly burdensome process in itself. In addition, a search of source code from Dell, a third party, is burdensome and not proportional.

4. Documents sufficient to show how Your application-layer software invokes or interacts with NVIDIA GPU-Acceleration Software components in the products, features, or services identified in response to Request No. 1 [originally Request No. 5], including the types of workloads, models, API calls, or applications executed using NVIDIA GPU-Acceleration Software.

**Neural AI Comments**: NAI relies on the veracity of Dell's representation that it has no responsive documents for this Request.

**Dell Comments**: With regard to the installation or servicing of software for Dell customers, Dell does not maintain in the ordinary course of its business records of the specific NVIDIA software configurations for its customers. These configurations are performed in the customer's IT environment and are not saved by Dell. ***Dell has nothing to produce in response to RFP No. 4.*** And even if Dell could reasonably search for its customers' configuration

information (it cannot), Dell would likely be required to provide notice to those customers that their sensitive information may be produced in litigation—a highly burdensome process in itself. In addition, a search of source code from Dell, a third party, is burdensome and not proportional.

5. Documents sufficient to identify any modifications, wrappers, extensions, plug-ins, or custom integration layers created by You that alter, extend, or interface with accused NVIDIA GPU-Acceleration Software, including representative internal development notes, version control records, Git repositories, commit logs, or related documents sufficient to show the nature of that work.

**Neural AI Comments**: NAI relies on the veracity of Dell's representation that it has no responsive documents for this Request. That being said, it is difficult to imagine a scenario where a sophisticated company has no record of the work it performs for its customers.

**Dell Comments**: With regard to the installation or servicing of software for Dell customers, Dell does not maintain in the ordinary course of its business records of the specific NVIDIA software configurations for its customers. These configurations are performed in the customer's IT environment and are not saved by Dell. ***Dell has nothing to produce in response to RFP No. 5.*** And even if Dell could reasonably search for its customers' configuration information (it cannot), Dell would likely be required to provide notice to those customers that their sensitive information may be produced in litigation—a highly burdensome process in itself. In addition, a search of source code from Dell, a third party, is burdensome and not proportional.

6. Communications between You and NVIDIA relating to the setup, integration, customization, support, or use of any NVIDIA GPU-Acceleration Software in the products, features, or services identified in response to Request No. 1 [originally Request No. 5].

**Dell and Neural AI agree that this Request is withdrawn.**

7. Documents sufficient to show Your own evaluation, measurement, or realization of any performance benefits, functional improvements, business value, or cost-benefit analyses created derived from using any accused NVIDIA GPU-Acceleration Hardware in the products, features, or services identified in response to Request No. 1 [originally Request No. 5].

**Neural AI Comments**: As NAI previously explained to Dell, information responsive to Request No. 7 is not limited to the hypothetical negotiation. Dell assessments of the functionality in NVIDIA products are relevant to damages, in that they can be used to assist with apportionment or to quantify the benefits of the invention. NAI's counsel provided Dell's counsel with a document Dell provides online that shows Dell has performed benchmark testing on Dell's products. *See* https://dl.dell.com/manuals/common/dellemc_readysol_ai_deeplearning_nvidia.pdf. To the extent other documents exist, Dell should be compelled to produce them.

Given that the subpoena has been outstanding since October and NAI has been actively seeking a production of documents since April, NAI asks the Court to require production within 14 days.

**Dell Comments**: ***Dell will stand on its objections to searching for and producing Dell's internal evaluation documentation related to NVIDIA hardware.*** Document production on Dell's evaluation of NVIDIA hardware is irrelevant, not proportional, and would be burdensome. Dell is a third party. What Dell thinks today of NVIDIA hardware would have no bearing

whatsoever on a hypothetical negotiation conducted at least eight years ago (or even earlier) between NAI and NVIDIA. Dell would not be present at or involved in the hypothetical negotiation that is at issue in this lawsuit. NVIDIA is seeking "sound bite discovery" from Dell so that its experts can tell the jury that a company with a household name said "X" about NVIDIA's hardware. A search of this kind from a third party is irrelevant, not proportional, and burdensome.

As for NAI's comments, NAI's suggestion that Dell conduct a search so that NAI may use the documents to assess *apportionment* or the *benefits* of the invention demonstrates that this search is not proportional or reasonable. Documentation on apportionment or the benefits of the invention *should come from NVIDIA*, which will no doubt possess relevant documents concerning the benefits of NVIDIA's own products and NVIDIA itself will be present at the hypothetical negotiation (but Dell will not be).

8. Documents sufficient to show revenue, usage, sales, and/or subscription data for Your services or software platforms identified in response to Request No. 1 [originally Request No. 5].

**Neural AI Comments**: NAI agrees to withdraw the request for revenue documents. But even with this narrowing, Dell's response in this filing makes clear that Dell's production is incomplete. Dell indicates that it will search for documents related to its one dozen customers who receive assistance with installations. But Dell has not agreed to produce (or even search) documents sufficient to show the usage of its services by the 200-300 customers referenced in Dell's position for Request No. 1.

Given that the subpoena has been outstanding since October and NAI has been actively seeking a production of documents since April, NAI asks the Court to require production within 14 days.

**Dell Comments**: ***Dell has already provided data on "usage" for the installations set out in DELL-000001. NAI has withdrawn its request for revenue.***

As for NAI's comments, with respect to the 200-300 customers have purchased a services package for NVIDIA software from Dell and the timing of production, Dell incorporates its comments from RFP No. 1.

9. Internal documentation, including wiki pages, collaborative documentation platforms, engineering knowledge bases, or similar repositories, sufficient to show the design, development, architecture, technical functionality, configuration, integration, operation, or deployment of the products, features, or services identified in response to Request No. 1 [originally Request No. 5], including documentation sufficient to identify any modifications, disablements, substitutions, workarounds, or customizations affecting the operation of such software.

**Neural AI Comments**: NAI has yet to see an example of Dell's statement of work documents. To the extent the statement of work is sufficient to show the ways in which Dell designs and configures the installations it performs, then NAI agrees the statement of work documents would be sufficient. If the statement of work documents do not reflect such information, then the Court should compel production of documents sufficient to show it.

Given that the subpoena has been outstanding since October and NAI has been actively seeking a production of documents since April, NAI asks the Court to require production within 14 days.

**Dell Comments**: ***The "Statement of Work" or other documentation describing the installation of software for customers, which is described above in response to RFP No. 1, relates to this request and Dell will search for and produce these materials as described above.***

As the Court observed in the hearing on the discovery dispute chart, RFP No. 10 calls for the detailed search and production of information that is not proportional. In addition, information on the technical operation of the accused software should come from NVIDIA, which is a party and developed the software.

As for NAI's comments, the Statement of Work are sufficient.

**Dell's Renewed Request for Fees:** Dell respectfully renews its request for fees, both as a sanction for past conduct by NAI and with regard to fee-shifting for any additional searching by Dell that is ordered by the Court. As for past conduct by NAI, the call with Mr. Magni, which was the first involvement of counsel from NAI who was both knowledgeable and had decision-making authority, should have occurred months ago and would have likely avoided rounds and rounds of pointless meet and confers and harassing behavior from NAI. Also, Mr. Magni's recent efforts to narrow the scope of the subpoena demonstrate that NAI did not undertake reasonable efforts to avoid imposing undue burden or expense at the outset.

**Neural AI's Response Dell's Renewed Request for Fees:** Dell's request that the Court sanction NAI is outlandish. First, Dell's characterization of the prior meet and confers is completely inaccurate. NAI was represented at each meet and confer by lead counsel Max Tribble along with experienced associate Tanner Laiche who has argued before this Court and is deeply involved in both the technical issues in this case as well as NAI's third-party discovery efforts. NAI's counsel had the necessary knowledge and authority. Additionally, Dell ignores the fact that NAI *did* previously reduce its original number of Requests from twenty to nine as part of those meet and confers. Second, Mr. Magni's agreement to *further* reduce the scope of the requested discovery is

not evidence that the nine requests were unreasonable. Rather, Mr. Magni took to heart the guidance the Court provided during the hearing. Third, it is unclear how Dell can seek sanctions for allegedly being burdened by unreasonable conduct when it has demonstrated time and again that it has done little to respond to the subpoena. Dell only produced a single document prior to the hearing on the dispute chart, and only one hour before the hearing. During the subsequent meet and confer ordered by the Court, it became clear that Dell had not yet determined which services it offered related to the NVIDIA software, despite the Requests being outstanding for months. Dell even requested an extension to this filing to further investigate what services Dell offers related to the NVIDIA software. Indeed, Dell's position in this filing makes clear that Dell has yet to conduct searches for responsive documents.

Overall, NAI's requests have been reasonable, and it has made every effort to limit the burden on a third party, including ultimately serving nine requests for production, eight of which were "sufficient to show" requests. Dell's request for a sanction should be rejected.

Dated: June 29, 2026

Respectfully submitted,

*Roger Fulghum*
Roger Fulghum
Baker Botts LLP
910 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-1707
Facsimile: (713) 229-2707
Email: roger.fulghum@bakerbotts.com

*Attorneys for Dell Inc.*

/s/ *Rocco Magni*
Max L. Tribble
Texas State Bar 20213950
Brian D. Melton
Texas State Bar 24010620
Rocco Magni
Texas State Bar 24092745
Samuel Drezdzon
Texas State Bar 24117374
SUSMAN GODFREY L.L.P.
1000 Louisiana
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
bmelton@susmangodfrey.com

rmagni@susmangodfrey.com
sdrezdzon@susmangodfrey.com

Tamar Lusztig
NY State Bar 5125174
Emily Portuguese
NY State Bar 5920327
One Manhattan West, 50th Floor
New York, NY 10001
tlusztig@susmangodfrey.com
eportuguese@susmangodfrey.com

Tanner Laiche
SUSMAN GODFREY L.L.P.
WA State Bar 60450
401 Union Street, Suite 3000
Seattle, WA 98101
tlaiche@susmangodfrey.com

Mark D. Siegmund
Texas State Bar No. 24117055
CHERRY JOHSON SIEGMUND JAMES PC
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710

Max Ciccarelli
Texas State Bar No. 00787242 CICCARELLI
LAW FIRM LLC
100 N. 6th Street, Suite 502
Waco, Texas 76701
Max@CiccarelliLawFirm.com

*Attorneys for Plaintiff Neural AI, LLC*