**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **NEURAL AI, LLC,** | |
| Petitioner, | **Case No. 7:26-mc-00241-DC** |
| v. | |
| **MICROSOFT CORPORATION,** | **[Underlying Case: USDC Western District of Texas No. 7:24-cv-00221-ADA-DTG]** |
| Respondent. | |

**NEURAL AI'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL COMPLIANCE WITH SUBPOENA SERVED ON THIRD-PARTY MICROSOFT CORPORATION**

i

This Court should compel document production in response to Neural AI's subpoena. Microsoft first seeks to avoid the subpoena by claiming the court lacks jurisdiction because its headquarters are in Seattle. But that's not the law. The rule allows for enforcement within 100 miles of where Microsoft transacts business. Even if Microsoft's articulation of the law were correct and substantial business activities were required, it conducts significant business here. It is also a major purchaser and real-world user of the accused NVIDIA hardware and software. Given these facts, it is subject to subpoena enforcement in this District and must produce documents sufficient to show how it uses and benefits from infringing combinations of NVIDIA hardware and software at issue in the underlying case. The Court should reject Microsoft's attempts to (1) avoid a motion to compel in this District despite its ties to and business conducted in this District; (2) argue that its production of one page stating the volumes at which it uses NVIDIA GPUs without any supporting documentation moots Neural AI's motion; and (3) re-write history by asserting that the parties never met and conferred on the outstanding discovery requests.

## A.    FACTUAL BACKGROUND REGARDING THE PARTIES' CONFERENCES

Microsoft inaccurately recounts the parties' conferences. Microsoft alleges that the parties discussed Microsoft producing only a spreadsheet containing volume data and that Neural AI "did not request any other information. Microsoft Memorandum in Response to Petitioner's Motion to Compel, Dkt. 7 ("Response") at 3. Not so.

In Spring 2026, the parties met and conferred by videoconference three times. On the first conference on April 13, Neural AI explained that it was looking for technical documents, like configuration files, internal presentations, and architectural diagrams. Declaration of E. Portuguese ("Portuguese Decl.") ¶ 3. Counsel for Microsoft was unwilling to produce documentation for all accused products but said it would consider searching for documents for a subset of products configured in an allegedly infringing manner. *Id.* Microsoft asked Neural AI to provide a more

1

detailed explanation of what an allegedly infringing configuration would look like. *Id.*

Neural AI provided just what Microsoft requested. *See* Dkt. 1-7 at 4-6. Neural AI explained that it seeks documents concerning a specific allegedly infringing configuration: use of an NVIDIA GPU in combination with specific NVIDIA software products. *Id.* at 5. Because multiple different kinds of software applications fit the relevant description, Neural AI gave NVIDIA NeMo as an example of an application of interest. *Id.* In providing that limitation, Neural AI expressly reiterated that it sought "the documents described in Requests 5, 7, 8, 9, 10, 12, 13, 14 and 19," *id.* at 5, which includes "[t]echnical documentation, architectural diagrams, source code excerpts, or internal presentations sufficient to show how You implemented, incorporated, or otherwise used any NVIDIA GPU-Acceleration Software in any GPU-accelerated system." *See* Dkt. 1-3 at 19.

On May 21, 2026, Neural AI again reiterated the types of documentation it sought. Portuguese Decl. ¶ 4. Microsoft understood the request but said, without any evidence regarding burden, that production of such documents was overly burdensome. *Id.* Neural AI suggested that a spreadsheet listing each configuring use and the volume of each use could be an *intermediate step* before document collection to help both Neural AI and Microsoft understand where to focus their energy going forward relating to the subpoena. *Id.* Neural AI explicitly stated that it was not further limiting the subpoena or waiving its rights.

After more than a week passed without Microsoft committing to make any production, Neural AI sent Microsoft a discovery dispute chart. That chart also confirms Neural AI's version of events. The chart makes clear Neural AI asked for documents about "how NVIDIA's accused products are actually integrated and used in real-world systems" including "Microsoft's internal integration materials, architecture documents, implementation artifacts, and internal

communications." Portuguese Decl., Exhibit H at 2. These are the same documents Neural AI and Microsoft had discussed on the previous two meet and confers.

Not until June 5 did Microsoft state that it was investigating making a production of volume spreadsheets—the same spreadsheets Neural AI had called only an intermediate step. Portuguese Decl. ¶ 5. (Even then, Microsoft did not commit to producing anything; it said it would not know for another three weeks if it had anything to produce.) Neural AI believed such volume information was an important step in Microsoft's productions but never agreed or implied that the spreadsheet was the only document that Microsoft would produce. Response at 1.

On June 26, Microsoft made its production of the so-called volume spreadsheet. Portuguese Decl. ¶ 6. The one-page production confirmed that Microsoft is using NVIDIA products in allegedly infringing configurations, but the production is missing any documents or information about those configurations. Following its receipt of the production and prior to Microsoft filing its response in opposition, NAI emailed Microsoft explaining why the production was deficient, asking Microsoft to confirm whether it planned to make further productions, and requesting a meet and confer. Portuguese Decl., Exhibit I at 1. Microsoft's Response incorrectly stated in its Response that Neural AI had "neither requested a meet and confer nor identified anything it believes something is missing from Microsoft's production." *See* Response at 4.

**B.      THIS COURT HAS JURISDICTION OVER THE PARTIES' DISPUTE.**

This Court has repeatedly held that the Court with jurisdiction over the dispute is the Court within the District where compliance was requested, rather than some other location, like where the subpoena recipient is headquartered. *See, e.g.*, *Westchester Cnty. v. Doe*, No. MO:20-CV-00012-DC, 2020 WL 14021063, at *2 (W.D. Tex. June 11, 2020) ("[O]nly the court for the district where compliance is required may compel a third-party to produce documents."); *Smith W. Texas Props., Ltd. v. Allied Prop. & Cas. Ins. Co.*, No. MO:18-CV-137-DC, 2020 WL 6365540, at *2

(W.D. Tex. Aug. 7, 2020). The place of compliance on the subpoena at issue is in Austin, Texas. Neural AI has already explained at length why the place of compliance in Austin is proper, *see* Memorandum in Support of Motion to Compel, Dkt. 1 ("Mot.") at 4-6, and none of Microsoft's cited case law overcomes evidence that Microsoft transacts business in person in this District.

Microsoft far exceeds the minimum requirement for business transacted in this District. It is a corporation conducting significant operations nationwide, with particular effort expended in Texas, including through its corporate office in Austin; its collaborations with the University of Texas at Austin;[1] and its data centers within this District.[2] Microsoft chose to take advantage of the Texas market—of the talent pool, universities, and data centers located here. The consequence of Microsoft's choice is that it transacts business in person in this District and is thus subject to jurisdiction within this District for the purposes of responding to a motion to compel compliance with a subpoena. *Cf. Wsou Invs. LLC v. Microsoft Corp.*, No. W-20-CV-00454-ADA, 2022 WL 2078216, at *9 (W.D. Tex. June 9, 2022) (Microsoft did not dispute that the Austin Division within this District is a proper forum in which it may face litigation).

## C.   MICROSOFT MUST PRODUCE DOCUMENTS SHOWING HOW IT USES NVIDIA HARDWARE AND SOFTWARE.

First, Microsoft's production made on June 26, 2026, moots nothing. To the contrary, it confirms Microsoft uses accused NVIDIA GPUs and software in infringing configurations and provides volume information for those uses. What is missing from the production is any documentation or information showing *how* Microsoft is using this hardware and software in combination. At the most basic level, the production is missing the combinations themselves:

---

[1] https://ischool.utexas.edu/news/microsoft-research-partners-ut-austin-texas-ischool-microsoft-ability-initiative

[2]      https://blogs.microsoft.com/blog/2026/06/22/powering-the-next-wave-of-ai-expanding-capacity-with-our-new-datacenter-in-pecos/

which software is being used with the NVIDIA GPUs, whether it is TensorRT or an application like NeMo, which utilizes TensorRT. For each infringing configuration, Microsoft must produce documents sufficient to show how it implemented, incorporated, integrated, or otherwise used the relevant software with NVIDIA hardware in a GPU-accelerated system.

Second, on multiple conferences, Microsoft and Neural AI conferred on the requests and the documentation sought. Microsoft's assertion that Neural AI has ignored meet-and-confer requirements is blatantly false.[3] An accurate history is detailed above in Section A.

Third, Neural AI has shown that these documents are relevant. Neural AI brought claims of indirect and induced infringement against NVIDIA. One element of induced infringement is that "there must be direct infringement by a third party." *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 1398 (2026). Here, Microsoft has already confirmed that it uses the NVIDIA hardware and software in infringing configurations, so evidence from this third-party user about how it implements the product is relevant. *See Barry v. Medtronic, Inc.*, 230 F. Supp. 3d 630, 641 (E.D. Tex. 2017) (explaining the relevance of testimony from product's end user about how he used the product).

Finally, Microsoft has not sufficiently articulated a burden objection. Instead, the production makes clear that Microsoft maintains this information. To have determined that Microsoft is using the NVIDIA products in infringing configurations, it must have consulted some documents showing that use. Microsoft must also have some documentation explaining why it uses such configurations and the benefit Microsoft receives from doing so. Absent supported and legitimate relevance and burden objections, it must produce them.

---

[3] Nor did Neural AI skip meet and confers with Dell Judge Gilliland did not order the parties to confer to remedy a deficiency. The Court required further conference to allow the parties to resolve the dispute based on "high-level guidance" from the Court at the hearing. *See* Dkt. 7-3 at 23:6-11.

Dated: July 8, 2026

Respectfully submitted,

 /s/ *Mark Siegmund*
Mark D. Siegmund
Texas State Bar No. 24117055
CHERRY JOHNSON SIEGMUND
JAMES PC
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
msiegmund@cjsjlaw.com

Max L. Tribble
Texas State Bar 20213950
Brian D. Melton
Texas State Bar 24010620
Rocco Magni
Texas State Bar 24092745
Samuel Drezdzon
Texas State Bar 24117374
SUSMAN GODFREY L.L.P.
1000 Louisiana
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
bmelton@susmangodfrey.com
rmagni@susmangodfrey.com
sdrezdzon@susmangodfrey.com

Tamar Lusztig
NY State Bar 5125174
Emily Portuguese
NY State Bar 5920327
One Manhattan West, 50th Floor
New York, NY 10001
tlusztig@susmangodfrey.com
eportuguese@susmangodfrey.com

Tanner Laiche
WA State Bar 60450
401 Union Street, Suite 3000

6

Seattle, WA 98101
tlaiche@susmangodfrey.com

Max Ciccarelli
Texas State Bar No. 00787242
CICCARELLI LAW FIRM LLC
100 N. 6th Street, Suite 502
Waco, Texas 76701
Max@CiccarelliLawFirm.com

*Attorneys for Petitioner Neural AI, LLC*

7